UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ELIZABETH THOMAS, 97-G-0576,                          97-CV-0267E(Sr)

                    Plaintiff,

          -vs-

A. ANDREWS,
M.L. MORSE,                                           MEMORANDUM
MARIA DOLORES MARTINEZ,
DAVID POST,                                                  and
MARK S. TAYLOR,
DALE SCALISE,                                         ORDER[1]
WILLIAM BAILEY,
D. WATSON,
MICHAEL GALBREATH,
CINDY HENRIQUEZ,
K. MONTAGUE and
J. CANELLA,

                    Defendants.

_____

## BACKGROUND

          Plaintiff, Elizabeth Thomas, a former inmate at the New York State Correctional

Facility at Albion ("Albion"), alleges that various officials and officers with the New

York State Department of Correctional Services ("DOCS") at Albion conspired[2] to

_____

          [1]This decision may be cited in whole or in any part.

          [2]Thomas's assertions of conspiracy within the Fourth Amended Complaint ("the Complaint"), which is the operative document for this matter, are wholly conclusory in nature. Inasmuch as Thomas fails to enumerate a specific claim for conspiracy, there is no such claim for the Court to dismiss.

deprive her and deprived her of her civil rights in violation of 42 U.S.C. §1983.[3]

Thomas alleges that defendants Andrews[4], Morse[5], Martinez, Post, Taylor, Watson, Henriquez, Montague and Canella denied her access to the courts in violation of her First and Fourteenth Amendment rights by confiscating her legal documents on several occasions, refusing to make copies of legal documents for her and preventing her from serving legal papers.  Thomas alleges that defendants Andrews, Post, Taylor, Scalise, Bailey, Watson and Galbreath took various actions against her, including confiscating her legal documents, issuing misbehavior reports falsely accusing her of wrongdoing, subjecting her to an unwritten set of rules and regulations pertaining only to her and denying her medical treatment, in retaliation for her numerous grievances and lawsuits, including the instant matter, also in violation of her First and Fourteenth Amendment rights.

She further alleges that defendant Taylor sexually harassed her — both verbally and physically — and on February 5, 1998, physically assaulted her in retaliation for her filing of grievances and this litigation.[6]  She further alleges that

---

[3]The Complaint was filed on August 8, 2003 with the assistance of counsel appointed to represent Thomas in July 2001.  In addition to the §1983 claims, Thomas asserts against defendant Taylor a New York state law claim for assault pursuant to the Court's supplemental jurisdiction.

[4]Andrews was the Superintendent of Albion at the time of the relevant events.

[5]Morse was the Deputy Superintendent for Programs at Albion at the time of the relevant events.

[6]Thomas's state law assault claim is also based on the February 5, 1998 incident.

Taylor's harassment and assault violated her Fourteenth Amendment due process rights and constituted cruel and unusual punishment in violation of the Eighth Amendment.  Thomas seeks compensatory and punitive damages and injunctive relief as to all defendants.[7]

Currently pending before the Court are four separate Motions for Summary Judgment filed by various groups of defendants.  Bailey and Galbreath filed their Motion (#250) on May 13, 2005.  Taylor filed his Motion (#253) on June 23, 2005.  Scalise filed her Motion (#257) on August 15, 2005 and Andrews, Morse, Martinez, Watson, Canella, Henriquez, Montague and Post filed their Motion (#258) on October 14, 2005.  Thomas filed a single memorandum in opposition to all four Motions on January 4, 2006.  The defendants filed reply memoranda and the Motions were submitted on the papers and without oral argument on February 24, 2006.

<u>FACTUAL ALLEGATIONS</u>[8]

Thomas was transferred to Albion from the Bedford Hills Correctional Facility on or about December 17, 1996.[9]  From January 1997 until some time in April 1997, Thomas worked in the law library under the direction of defendant Taylor.  She

---

[7]Thomas was released from DOCS custody in August 2004 and accordingly any request to enjoin defendants from interfering in her ability to prosecute her various court actions is moot.

[8]Many of the facts of this case are disputed.  In order to provide a background of all the relevant events, the Court will briefly discuss Thomas's factual allegations.  The undisputed facts relevant to each claim will be discussed *infra* in the discussion of each claim.

[9]Thomas was transferred out of Albion in March or April 2000.

alleges that during her employment in the library Taylor subjected her to verbal and physical sexual harassment and that after she requested reassignment to another work location, Taylor continued to verbally harass her and retaliated against her for her complaints regarding his harassment by physically assaulting her on February 5, 1998, causing injury to her left shoulder.

During her incarceration at Albion, Thomas prosecuted a number of lawsuits pertaining to her criminal conviction, her conditions of confinement and also civil litigation unrelated to her incarceration.  She alleges that numerous defendants interfered in her ability to prosecute those lawsuits by, *inter alia,* failing to make copies of her legal documents, refusing to assist her in serving papers and confiscating her legal documents on several occasions.  She further alleges that several defendants thereafter retaliated against her for complaining about the interference by again confiscating her legal materials, issuing misbehavior reports and applying a special set of unwritten rules to her.

The specific facts will be discussed as they relate to each claim.

<u>DISCUSSION</u>

A motion for summary judgment will be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FRCvP 56(c).  In determining whether genuine issues of material fact exist, "[t]he evidence of the

nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson* v. *Liberty Lobby*, *Inc.*, 477 U.S. 242, 255 (1986) (internal citation omitted). However, to defeat a motion for summary judgment, the nonmovant cannot simply rely on allegations in the pleadings that merely raise "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, at 256.

"When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo* v. *Prudential Residential Servs. Ltd.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994). Upon a motion for summary judgment, the Court's role is limited to determining whether there exists a genuine issue of material fact requiring trial.

A.  <u>First Claim — Denial of Access to the Courts</u>

Plaintiff alleges that defendants Andrews, Morse, Martinez, Post, Taylor, Watson, Henriquez, Montague and Canella all violated her First and Fourteenth Amendment right of access to the courts with respect to her criminal appeal, her Orleans County Article 78 proceeding, a Court of Claims matter, her Eastern District of New York federal *habeas corpus* petition, another civil action against Mary Louise Bruneau, referred to herein as "the Bruneau litigation" and with respect to the instant

matter.[10]   At her deposition and in her memorandum opposing these Motions, however, Thomas acknowledged that she either was not impeded or cannot prove that she was impeded in the prosecution of most of the above-referenced matters.

In footnote 3 on page 22 of her opposition memorandum, Thomas admits that because she was represented by counsel as to her criminal appeal, she cannot state a claim for interference in violation of her First Amendment rights with respect to the filing of her *pro se* supplemental brief.  In that same footnote, Thomas admits that she cannot prove that the outcome of her Article 78 proceeding in Orleans County would have been different had defendants not committed the alleged interference.  Thus, she cannot state a claim as to interference with that lawsuit.  With respect to the unspecified Court of Claims matter, at her deposition, Thomas stated that the case had been litigated and dismissed.  (Thomas March 3, 2004 Depo. at 339-340.)[11]  Also in her deposition, Thomas stated that her federal *habeas corpus* petition had not been impeded.  (Thomas March 3, 2004 Depo. at 344, lns. 2-8.)  Accordingly, she fails to state a First Amendment claim with respect to the Court of Claims matter.  With respect to the instant case, Thomas has stated to this Court, on the record, that she

---

[10]Such interference allegedly included failure to accommodate her need to serve legal papers, failure to make nine copies of a *pro se* supplemental appellate brief, falsely informing her that she need only file one copy of that same appellate brief and seizure of her legal documents on several occasions.

[11]Even if Thomas could articulate a manner in which her litigation was impeded, the Court of Claims matter was civil in nature and, as is discussed in detail *supra*, an inmate has no constitutional right of access to the courts to pursue this type of civil litigation.

was satisfied with the return of her documents after they were properly redacted and Thomas has failed to assert any actual impediment to her litigation of the instant matter.  (Schroeder September 8, 2000 Report & Recommendation at 4.)  In fact, the Court has already found that Thomas's ability to litigate the instant matter has not been impeded.  *Id*. at 7-8.  Accordingly, the only remaining matter for the Court's consideration is Thomas's claim to have been impeded in her prosecution of the Bruneau litigation by Andrews, Morse and Martinez.

Thomas commenced a civil action against Bruneau in order to recover the expenses Thomas allegedly incurred in performing certain home renovations for Bruneau.  Bruneau's name had been placed — at Bruneau's request — on Thomas's "negative correspondence" list, which placement prevented Thomas from directly corresponding with or otherwise contacting Bruneau from DOCS custody.  Thomas alleges that she inquired of Andrews on several occasions as to whether a special procedure could be implemented — as had allegedly been implemented previously for her at Bedford Hills — to allow her to serve legal papers on Bruneau.[12]  Thomas alleges that the requests were denied by Morse and Martinez despite confirmation from Bedford Hills that such procedure had been implemented for Thomas.  Thomas also alleges that she was instructed to bring her legal materials to Martinez for

---

[12]Thomas asserts that, at Bedford Hills, she had been allowed to serve court papers on Bruneau by a special procedure.  Thomas would provide copies of her pleadings to a DOCS staff member who would review the materials to ensure that they were related to the Bruneau litigation and the staff member would then mail them to Bruneau on Thomas's behalf.

review and that certain documents, namely her receipts of her expenses to be used to prove her case against Bruneau, were never returned to her.

Defendants Andrews, Martinez and Morse argue that Thomas cannot state a First Amendment claim for denial of access to the courts with respect to the Bruneau litigation because the First Amendment does not guarantee an inmate access to civil litigation.   Thomas failed to address defendants' argument in her opposition memorandum and simply asserts that there exist genuine issues of material fact requiring trial.

Incarcerated persons have a constitutional right of access to the courts such that states are required "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Bounds* v. *Smith*, 430 U.S. 817, 822, 825 (1977).  A claim for interference with that right is actionable under 42 U.S.C. §1983 only if the inmate can show an "actual injury" to the ability to challenge — directly or collaterally — the inmate's sentence or the conditions of confinement. *See Lewis* v. *Casey*, 518 U.S. 343, 351, 355 (1996).  "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*. at 355.

Assuming Thomas's version of the facts is correct, she cannot state a claim for interference with her First Amendment right of access to the courts.  The Bruneau litigation is civil in nature, and does not seek— directly or collaterally — to attack her

conviction or conditions of confinement or to otherwise vindicate her constitutional rights.

Defendants' Motions for Summary Judgment are granted as to this claim and Thomas's first cause of action is dismissed in its entirety.

B.  <u>Second Claim — Retaliation</u>

Thomas alleges that defendants Andrews, Taylor, Scalise, Bailey, Watson and Galbreath took numerous adverse actions against her in retaliation for the exercise of her civil rights including her filing of grievances and the instant litigation.[13]  "In order to prevail on a claim of retaliation, plaintiff bears the burden of showing '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'"  *Lashley* v. *Wakefield*, 367 F. Supp. 2d 461, 466 (W.D.N.Y. 2005) (*quoting Scott* v. *Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003), and *Gayle* v. *Gonyea*, 313 F.3d 677 (2d Cir. 2002)).  "Assuming that plaintiff can satisfy the three elements, defendants may escape liability if they demonstrate that they would have taken the same adverse action even in the absence of the protected conduct."  *Ibid*.

---

[13]While Thomas's Complaint alleges that defendant Post also retaliated against her, at her deposition, after extensive discussion of Post's alleged wrongdoing, Thomas stated that she could recall no actions Post had taken in retaliation for the grievance she filed regarding her legal documents.  (Thomas March 3, 2004 Depo. at 330.)  Accordingly, Post's Motion for Summary Judgment is granted as to the putative retaliation claim.

Because of the "near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, [courts] examine prisoners' claims of retaliation with skepticism and particular care."   *Colon* v. *Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) (*citing Flaherty* v. *Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).  As the relevant facts differ with respect to each defendant, the Court will consider each defendant separately.

1. <u>Taylor</u>

Thomas alleges that on May 23, 1997, she filed a grievance against Taylor and Post alleging that they obstructed her access to the courts.  Thomas alleges that she also directly complained about the obstruction to higher ranking officials at Albion. Thomas alleges that after she filed the May 1997 grievance, Taylor retaliated against her by threatening other inmates with punishment if they tried to help Thomas, requiring her to submit written requests for the books she wished to see from the library, filing a misbehavior report in July 1997 and again in September 1997 charging Thomas with removing Albion law books from the library, defacing her private property with an "Albion Correctional Facility" stamp, denying her access to the law library in September and October 1997 and otherwise making it "extremely difficult" for Thomas to conduct her legal research.  Thomas further alleges that, after she amended her complaint in this matter to include claims of harassment against Taylor, he retaliated against her on February 5, 1998 by physically assaulting her.

The record of grievances provided by Thomas indicates that on May 30, 1997 she filed grievance number 6579-97 which alleged that various procedures within the law library had the effect of impeding inmate access.  Also within that grievance, Thomas mentioned the difficulties she experienced pertaining to the filing of her *pro se* appellate brief and specifically referred to defendants Andrews and Post.  Taylor assisted in formulating the response to Thomas's grievance and Taylor provided information relating to the law library policies.  In her *appeal* to the Central Office Review Committee ("CORC") of her grievance, Thomas alleged that Taylor had taken various actions against her in retaliation for filing the grievance.  In the CORC determination denying Thomas's appeal, the CORC specifically noted Thomas's allegations of retaliation and informed her:

> "CORC notes that Departmental Directive # 4040, Section VI. <u>Procedural Safeguards</u>. B. states no reprisals of any kind shall be taken against an inmate or employee for good faith utilization of this grievance procedure. An inmate may pursue a complaint that a reprisal occurred through the grievance mechanism."

(Dkt. 273, Exhibits to Thomas's Opposition Exhibit P.)  Despite this explicit instruction from the CORC, Thomas has provided no evidence that she filed a grievance or complained in any other way of Taylor's alleged retaliation for the filing of her May 23, 1997 grievance.[14]

---

[14]The Court recognizes that, at the time of the relevant events, Second Circuit case law did not mandate the exhaustion of administrative remedies prior to filing a §1983 claim for retaliation.  Thomas does not argue, however, that such is the reason why she did not file a grievance alleging Taylor's retaliation.  In fact, Thomas offers *no* excuse for her failure to file a grievance concerning Taylor's retaliation for the May 1997 library.

Thomas also alleges that Taylor assaulted her on February 5, 1998 in retaliation for the claims she made against him in the instant lawsuit.[15]  Thomas also concedes that she did not file a grievance as to the alleged February 5, 1998 assault, but instead wrote a letter of complaint to the Inspector General's Office.  Thomas offers no justification for her failure to utilize the grievance process.  Thomas's complaint to the Inspector General is not sufficient to exhaust her administrative remedies because it did not result in a favorable outcome.  *See Marvin* v. *Goord*, 255 F.3d 40, 43, n. 3 (2d Cir. 2001), and *Hemphill* v. *New York*, 380 F.3d 680, 682, n.4 (2d Cir. 2004) (*cited in Tapp* v. *Kitchen*, 2004 WL 2403827, at * 6 (W.D.N.Y. 2004).

The Second Circuit has instructed courts to inquire where an inmate seeks to excuse the failure to exhaust (1) whether administrative remedies were in fact available to the inmate; (2) whether the defendants forfeited — by their own conduct — the affirmative defense of failure to exhaust, and (3) whether special circumstances have been plausible alleged to justify the failure to exhaust.  *Hemphill*, 380 F.3d at 686.

Here, unlike her argument with respect to her failure to exhaust her sexual harassment claims *supra*, Thomas does not assert that administrative remedies were unavailable with respect to her retaliation claim against Taylor or that special

---

[15]Thomas had filed an amended complaint in this matter in November 1997.  In January 1998, the Court directed that the amended complaint — with some alterations — be filed and that it be served on defendants.  The Court's records indicate that the November 1997 amended complaint was served on Taylor on February 2, 1998.

circumstances exist which justify her failure to file a grievance.   Moreover, even though she filed a complaint with the Inspector General, as noted, that determination was adverse to her and did make any finding as to her claim that the alleged assault was committed with retaliatory motives.   Accordingly, the Court concludes that Thomas failed to exhaust her administrative remedies with respect to her claim of retaliation.

2. <u>Bailey</u>

Thomas alleges that on February 5, 1998, after she was physically assaulted by defendant Taylor, she asked Bailey for medical treatment and Bailey refused.  She further alleges that, on that same date pursuant to a misbehavior report issued after her altercation with Taylor, Bailey placed her in a special housing unit ("SHU") cell containing only a soiled mattress (as opposed to a bed frame and a clean mattress).

Thomas's retaliation claim must be dismissed as to Bailey.   The evidence presented simply fails to raise an issue as to whether Bailey — in taking the adverse actions alleged — did so for the purpose of retaliating against Thomas for any protected activity.   Thomas has failed to allege or raise any issue of fact regarding any causal connection between any protected activity on her part and Bailey's actions.  While the allegations might have been sufficient to state a different sort of

claim, neither these allegations, nor any evidence presented to the Court supports a claim for retaliation against Bailey.[16]

Thomas did not file a grievance concerning the February 5, 1998 incident, but filed a complaint directly with the Inspector General's Office.  That complaint, however, only alleged assault by Taylor and made no mention of Bailey's alleged conduct.  Furthermore, Thomas appealed the determination of the disciplinary charges resulting from the incident with Taylor on February 5, 1998 and argued in that appeal that she was denied medical care and was placed in an SHU cell containing a dirty mattress.  She did not allege in the disciplinary appeal or in her complaint to the Inspector General that Bailey had taken any actions against her in retaliation for her protected conduct.  Bailey's Motion for Summary Judgment is granted as to the retaliation claim.

3. <u>Galbreath</u>

Thomas alleges that Galbreath unfairly administered the discipline arising from her February 25, 1998 disciplinary hearing by imposing unwritten rules and regulations upon her and by charging her with a violation of the rules which resulted in her confinement to SHU.  This claim must be dismissed as to Galbreath.  While

---

[16]The Court notes that Thomas is represented by counsel.  In fact, this Complaint was filed by counsel.  Ordinarily the Court would be inclined to examine the facts demonstrated by Thomas to determine whether they support any viable cause of action.  Such largess is only appropriate where the plaintiff is proceeding *pro se*.  The Court would, in an appropriate case, perhaps construe the allegations liberally even where a plaintiff is currently represented by counsel but had drafted the operative complaint *pro se*.

some of Thomas's allegations may state a claim of some sort, the allegations do not state a claim for retaliation.[17]

The record is barren of any evidence whatsoever that Galbreath took any action against Thomas in retaliation for protected conduct.  Thomas fails to allege that Galbreath retaliated for her grievances, complaints, lawsuits, or anything else.  She simply fails to assert that he was motivated by retaliation at all.  Galbreath's Motion for Summary Judgment must be granted as to this claim.[18]

4. <u>Scalise</u>

Thomas alleges that on February 12, 1998, Scalise — in concert with defendant Morse — issued a misbehavior report falsely accusing Thomas of possession of contraband arising from a search of her cubicle area on February 5, 1998.  Thomas further alleges that, at the disciplinary hearing pertaining to the February 12, 1998

---

[17]As noted above with respect to the retaliation claim against Bailey, had Thomas filed this Complaint in a *pro se* capacity, the Court would, of course, address any possible claim stated by Thomas's allegations.  This Complaint, however, was filed with the assistance of counsel. Thomas was represented by counsel at her deposition.  Accordingly, the Court will not examine the allegations to determine whether they state any claim other than the one they purport to state.

[18]Summary judgment is also appropriate in that Thomas did not exhaust her administrative remedies as to Galbreath.  While it is not disputed that Thomas filed a grievance alleging that Galbreath had imposed improper rules upon her (grievance number 6890-98), she did not allege in the grievance that he did so in retaliation for her protected conduct.  Thomas also notes that she appealed the determination of the March 16, 1998 disciplinary charges imposed by Galbreath.  Her appeal, however, also fails to allege that the charges were retaliatory.  Thus, even if the Court were to consider her appeal to be an effort to exhaust her administrative remedies with respect to this claim — which it does not — her appeal failed to raise the retaliation issue.

charge, Scalise gave false testimony as to the time of the relevant search,[19] that Morse improperly changed the time on the misbehavior report and that Scalise committed these acts in retaliation for the grievances Thomas had filed and litigation Thomas commenced against Morse.[20]  Thomas also alleges that on March 16, 1998 Scalise improperly placed Thomas in the SHU based on defendant Galbreath's report to Scalise that Thomas had violated the rules regarding her keeplock confinement.

Thomas fails to state a claim for retaliation against Scalise.  While Thomas alleges that she engaged in protected conduct by filing complaints about Morse's alleged contact with her brother, Thomas fails to provide any evidence raising a genuine issue as to whether Scalise's knew that Thomas had engaged in such protected conduct or that Scalise's act of writing the misbehavior report on February 12, 1998 was motivated by retaliation for Thomas having engaged in that protected conduct.  The only basis for Thomas's belief that Scalise was working in conjunction

---

[19]Thomas asserts that the February 12, 1998 misbehavior report lists the time of the search on February 5, 1998 as 8:15 a.m.  Thomas, however, acknowledges that the search was conducted because Thomas was placed in the SHU after her altercation with Taylor on February 5.  That altercation occurred after 4:00 p.m. on February 5, 1998.

[20]Thomas had been charged in July 1997 with stealing three books from the law library.  As a defense, Thomas asserted that the books belonged to her and had been sent to her by her brother but that she had no documentation reflecting such.  The July charges were dismissed, but Thomas was charged again in October 1997 with possession of the books.  Thomas's brother had written to Morse asserting that he had sent the books to Thomas, and Morse responded with a letter asking Thomas's brother to provide any receipts or other evidence he may have had demonstrating that he had sent the books to Thomas.  After discovering that Morse had contacted her brother, Thomas filed a grievance and amended her complaint in this action to allege that Morse's conduct was "over the line."  Thomas does not allege any retaliation by Morse himself.

with Morse was that Morse was the official in charge of the area in which the search was conducted.  (Thomas March 2, 2004 Depo. at 141-42.)  There is no evidence raising an issue of fact as to any causal connection between Thomas's filing of a complaint against Morse and Scalise's issuance of the misbehavior report.

Thomas fails to make even a conclusory allegation of retaliation with respect to Scalise's alleged conduct on March 16, 1998 when Scalise took Thomas to the SHU upon Galbreath's report that Thomas had committed a disciplinary infraction. Thomas's allegations against Scalise are supported by nothing more than pure speculation and conjecture and Scalise's motion for summary judgment on the retaliation claims is granted.[21]

5. Andrews

Thomas alleges that Andrews retaliated against her for her complaints regarding Andrews's alleged interference with her various lawsuits by having Thomas transferred out of Albion in March 2000.  This claim was previously the subject of a motion for preliminary injunction.  In denying that motion, Magistrate Judge Schroeder recommended and this Court concluded that Andrews had had a

---

[21]Thomas also failed to file a grievance alleging retaliation by Scalise.  While she filed an appeal of the disciplinary charges contained in the February 12, 1998 misbehavior report and alleged that the search did not take place or that it did not take place at the time stated on the report, at no time did Thomas assert that she was charged with the disciplinary infractions in retaliation for any protected activity.  Thus, even if the Court were to construe the disciplinary appeal as an attempt to exhaust administrative remedies, Thomas did not raise an allegation of retaliation against Scalise.

legitimate security concern once personnel files of various defendants were discovered in Thomas's possession.

As the files had erroneously been provided to Thomas by the Attorney General's Office without removal of personal information such as social security numbers and home addresses and telephone numbers, and as an article pertaining to identity theft was also found in Thomas's possession, the Court concluded that Andrews had properly exercised her discretionary authority in requesting that Thomas be transferred out of Albion.  (Schroeder September 8, 2000 Report & Recommendation, at 9-10.)  Upon this Motion, Thomas has provided no evidence raising an issue as to whether she was transferred in retaliation for her complaints. Accordingly, Andrews's Motion for Summary Judgment as to the retaliation claim is granted.

6. <u>Watson</u>

Thomas alleges that on March 9, 2000 Watson conducted a search of her cubicle and confiscated legal and religious materials.  Such is the sum total of the allegations against Watson.  Thomas has utterly failed to allege that Watson searched for and seized any materials in retaliation for Thomas's exercise of a protected right.  Watson's Motion for Summary Judgment as to retaliation is granted.

C. <u>Third Claim — Assault and Battery</u>

In her third claim, Thomas purports to assert a state law claim for assault and battery against Taylor arising from the incident on February 5, 1998 when Taylor

grabbed Thomas's left shoulder after she had disobeyed Taylor's order to remain in the building.  Thomas's claim is barred by Section 24(1) of New York Corrections Law which states:

> "No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee."

N.Y. Correct. Law §24(1).

While the language of the statute specifies that no action may be brought in state court, this Court acts as a state court when considering a state law claim brought pursuant to the Court's supplemental jurisdiction.  *See Baker* v. *Coughlin*, 77 F.3d 12, 13-14 (2d Cir. 1996); *see also Cepeda* v. *Coughlin*, 513 N.Y.S.2d 528 (3d Dep't 1987).  Accordingly, Thomas's third cause of action is dismissed for failure to state a claim.

D.  Fourth Claim — Due Process

Thomas alleges that defendant Taylor violated her Fourteenth Amendment due process rights by physically assaulting her on February 5, 1998.  The Fourteenth Amendment's substantive due process protection applies to claims of abusive governmental conduct that does not fall within the Fourth or Eighth Amendments. *County of Sacramento* v. *Lewis*, 523 U.S. 833, 843 (1998).  When a post-conviction prisoner claims that excessive force was used upon her, the primary source of

substantive protection is the Eighth Amendment.  *Graham* v. *Connor*, 490 U.S. 386, 395 n.10 (1989).  Here, as Thomas was in post-conviction custody at the time the allegedly excessive force was used, her claim is governed by the Eighth Amendment (as she alleges in her fifth cause of action) and she cannot state a claim for a violation of her Fourteenth Amendment substantive due process rights.  Taylor's Motion for Summary Judgment is granted as to the fourth cause of action.

E.  Fifth Claim — Cruel and Unusual Punishment

Thomas alleges that, by sexually harassing her in 1997 and by physically assaulting her on February 5, 1998, defendant Taylor violated her Eighth Amendment right to be free from cruel and unusual punishment.

The Eighth Amendment prohibits "the unnecessary and wanton infliction of pain."  *Estelle* v. *Gamble*, 429 U.S. 97, 103 (1976).  It also prohibits "punishments which are incompatible with the evolving standards of decency that mark the progress of a maturing society."  *Ibid*. (internal citation and quotation marks omitted).  Wantonness depends on "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Whitley* v. *Albers*, 475 U.S. 312, 320-21 (1986); *Sims* v. *Artuz*, 230 F.3d 14 (2d Cir. 2000).

1.  1997 Sexual Harassment

Thomas alleges that after she began working for Taylor in the Albion law library, he sexually harassed her both verbally and physically.  Thomas asserts that

when her employment first commenced, Taylor would frequently stop at her work area and talk with her.  She testified that she did not discourage Taylor from this conduct.[22]  She further alleges that from March to mid-April 1997, when she would accompany Taylor to the administration building in order to photocopy documents, the two would engage in sexual acts including touching, kissing and oral sex.  Thomas asserts that, on the first such occasion, she felt awkward, but that she did not feel so on subsequent occasions.  In mid-April Thomas informed Taylor that she was requesting to be reassigned to a different work environment and that she no longer wanted to continue the relationship.

While Thomas concedes that any physical harassment ended in mid-April 1997, she alleges that Taylor's verbal harassment continued thereafter.  Thomas alleges that, after she ceased working with Taylor, Taylor would call her "bitch" and "heartless" when she had occasion to see him.  She further alleges when she had occasion to see him, if no one else was present, Taylor would grab his crotch and asked if Thomas "missed him."  Finally she alleges that Taylor threatened to "get" her.  (Thomas March 3, 2004 Depo. at 295, ln. 10- 17.)

Thomas did not file a grievance concerning Taylor's alleged harassment.  Instead, in August 1997, she filed a complaint with the Inspector General's office.

---

[22]Thomas did testify however that she took offense to some of the comments Taylor made. For example, Taylor allegedly remarked to Thomas that her "mouth was unusually small for a black person.  And he could imagine the things that I could do with it."  Thomas's March 3, 2004 Depo. at 255, ln. 8 - 10.

Thomas does not assert that she was unaware of the grievance procedure or that she did not believe that harassment could be grieved. Instead, she acknowledges that she failed to file a grievance and argues that exceptional circumstances justify her failure to do so.

Thomas contends that she feared that if she filed a grievance she would be subjected to relentless retaliation and humiliation. Thomas contends that her belief was reasonable because she was present when another, more notorious Albion inmate — Amy Fisher — filed a grievance alleging harassment and that Fisher was continually humiliated and subjected to retaliation.

The Second Circuit has held that exceptional circumstances can justify and excuse an inmate's failure to file a grievance. *See Johnson* v. *Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004); *Giano* v. *Goord*, 380 F.3d 670, 676 (2d Cir. 2004). Such circumstances are not present here. Thomas's contention that she was intimidated from filing a grievance concerning Taylor's alleged harassment is simply not credible. Thomas filed at least 8 grievances while incarcerated at Albion, alleging among other things that defendants — including Taylor — interfered continually with her legal mail and documents and prevented her from utilizing other services. Thomas filed one such grievance against Taylor in May, 1997, just one month after the time period in which she claimed to be too fearful to file a retaliation grievance.[23]

---

[23]Thomas does not allege that grievances complaining of sexual harassment are viewed as more damaging or egregious by corrections officer such that it is more likely that she be subjected to retaliation for filing a grievance on that topic as opposed to other topics.

Moreover, she also did not feel so intimidated that she was prevented from filing a complaint with the Inspector General's office in August 1997. Thomas's claim of intimidation and fear as an excuse for failing to file a grievance concerning the alleged harassment simply rings false and the Court concludes that Thomas did not exhaust her administrative remedies. The claim is dismissed.

2. February 5, 1998 Assault

Thomas alleges that on February 5, 1998, she was permitted to enter the law library for notary services. While in the library, Thomas asserts that an inmate-clerk informed her that she had legal mail and the inmate-clerk handed Thomas a slip of paper with Thomas's name on it indicating that Thomas had legal mail. Thomas further asserts that when Taylor saw her waiting for the legal mail, he sent her away telling her that she did not have legal mail. Thomas alleges that she exited the law library and waited "outside the area" for permission to leave (known as "movement").

As she waited, the inmate-clerk from the law library approached her and asked Thomas to return the slip of paper Thomas had been handed. Thomas testified that:

> "So I told her I had threw it away because it had no significance to me. I mean, it was a scrap paper with just my name on it. She said okay and she went away and she came back. Officer Taylor then came and told me to give him that piece of paper back, and I told him it was in the garbage. So he said, well, which garbage? Where did you put it? I want the paper back. So I showed him which garbage that it was in. So he told me to get it, you know, to retrieve it. So I went to go look for a glove to get it out of the garbage. I couldn't find a glove. And I don't remember. We went on and on about the piece of paper that was in the

> garbage. They called movement line. I was leaving on the movement
> line. Mr. Taylor came behind me and he was calling me. I turned
> around and he told me to come back inside. I asked him why, this was
> the last – you know, this was the movement line. And I turned around
> to leave again. All of a sudden I felt the impact to my back, and he had
> grabbed me. He grabbed me and pulled me inside the building.

(Thomas's March 3, 2004 Depo. at 194, ln. 18 to 195, ln. 14.) Thomas also stated that

she felt an impact to her shoulder and then Taylor grabbed her jacket at the

shoulder.[24] While the Complaint alleges that Thomas was dragged back to the

building, her deposition testimony indicates that she walked back to the building.

Thomas contends that the force Taylor used was excessive and assaultive, that

she suffered bruising to her shoulder and that such conduct violated her Eighth

Amendment rights. Taylor denies that he used *any* force on February 5, 1998.

A claim of cruel and unusual punishment has "two components — one

subjective, focusing on the defendant's motive for his conduct, and the other

objective, focusing on the conduct's effect." *Sims* v. *Artuz*, 230 F.3d 14, 20-21 (2d Cir.

2000) (internal citations omitted). The subjective component is satisfied by conduct

committed wantonly, which concerns whether "force was applied in a good faith

---

[24]Thomas's deposition testimony differed from that which she provided to the Inspector General's Office. In the interview with that office, Thomas did not allege at all that Taylor was seeking a piece of paper from her, that Taylor wanted her to retrieve it from the garbage or that there was any discussion with Taylor outside of the law library prior to him ordering her to remain at the building. Also, according to the statement she gave the Inspector General's office, Taylor grabbed her jacket, not her shoulder, while she was still inside the building, that she shook free from Taylor and continued to leave the building, but that Taylor grabbed her jacket once again. Thomas's Opp'n Exhibit X, part 5. At yet another deposition, Thomas also testified that Taylor grabbed her shoulder, she stopped, "jerked away from him" and continued down the stairs. Taylor's Motion, Exhibit HH2., p.53.

effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 21. If a defendant acts with such intent, the Eighth Amendment may be violated notwithstanding the fact that the inmate may not have been significantly injured. *See id.*

In determining whether a defendant's use of force rises to the level of an Eighth Amendment violation, courts consider: the need for force, the relationship between the need and the amount used, the extent of the injury suffered, the extent of the threat to the safety of staff and inmates and any efforts made to temper the severity of a forceful response. *See Baker* v. *Willett*, 42 F. Supp. 2d 192, 196 (N.D.N.Y. 1999) (internal citations omitted). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Johnson* v. *Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). "A *de minimis* use of force will rarely suffice to state a constitutional claim." *Romano* v. *Howarth*, 998 F.2d 101, 105 (2d Cir. 1993)).

At her deposition, Thomas admitted that Taylor had instructed her to stay where she was but that she left the building.[25] Assuming that Thomas's version of the facts is correct and that Taylor followed Thomas out of the building, and grabbed Thomas's left shoulder to prevent her from going further and to bring her back inside the building, a consideration of the five factors discussed above leads the Court to

---

[25]In her affidavit opposing these Motions, Thomas avers that she did not hear Taylor give any order.

conclude that the amount of force applied was *de minimis* and does not rise to the level of an Eighth Amendment violation.  Thomas has admitted that she disobeyed Taylor's instruction to remain in the building.  Verbal instruction having failed, Taylor was entitled to use minimal force to compel Thomas to comply with his directive. The amount of force allegedly used — grabbing Thomas's shoulder to stop her movement — was proportional to that required.  While Thomas does allege that she was injured, and the medical evidence does demonstrate that Thomas had a bruise on her left shoulder, such injury, on its own, and in light of the other evidence concerning this encounter, is insufficient to raise a genuine issue of material fact as to whether the force used was unconstitutional.  Accordingly, the Court concludes that Thomas has failed to raise a genuine issue of material fact as to her Eighth Amendment claim and Taylor's Motion for Summary Judgment is granted as to this issue.

<u>CONCLUSION</u>

For the above-stated reasons, Defendant Scalise's Motion (#257) is granted in its entirety and all claims against Scalise are dismissed; Defendant Taylor's Motion (#253) is granted in its entirety; Defendants Bailey and Galbreath's Motion (#250) is granted in its entirety and Defendants Andrews, Morse, Martinez, Watson, Canella, Henriquez, Montague and Post's Motion (#258) is granted in its entirety.

It is accordingly **ORDERED** that defendants' Motions are granted, Thomas's

case is dismissed and the Clerk of the Court is directed to take all steps necessary to

close the case.

DATED:        Buffalo, N.Y.

              September 29, 2006

                              _____/s/ John T. Elfvin_____
                                       JOHN T. ELFVIN
                                       S.U.S.D.J.